# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. CIV-21-295-GLJ |
| DOLGENCORP, LLC, doing business as Dollar General, | ) ) ) | |
| Defendant. | ) ) | |

## ORDER

This matter is before the Court on dueling motions for summary judgment. Defendant DolGenCorp LLC, doing business as Dollar General, moves for summary judgment on all of Plaintiff EEOC's claims against Defendant, based on age discrimination. Plaintiff also moves for partial summary judgment as to Defendant's defenses. For the reasons set forth below, the Court finds that Defendant's Memorandum in Support of Motion for Summary Judgment [Docket No. 100] should be GRANTED IN PART and DENIED IN PART, and Plaintiff EEOC's Motion for Partial Summary Judgment with Brief in Support [Docket No. 102] should be GRANTED IN PART and DENIED IN PART. Additionally, Plaintiff's Motion to Strike Confidential Exhibits to Defendant's Response to Plaintiff's Motion for Partial Summary Judgment [Docket No. 117] is hereby GRANTED, and Defendant's Motion for Leave to Supplement Evidence in Response to EEOC's Partial Motion for Summary Judgment [Docket No. 122] is DENIED as MOOT.

1

## I.     PROCEDURAL HISTORY

On September 30, 2021, Plaintiff filed the Complaint on behalf of three former Dollar General District Managers ["DMs"] and other DMs over the age of 50 in the Eastern District of Oklahoma.  Docket Nos. 1-2.  On November 15, 2023, Defendant moved for summary judgment [Docket No. 100] on all claims, and Plaintiff moved for partial summary judgment [Docket No. 102] as to Defendant's defenses, including failure to mitigate and meeting conditions precedent to filing suit.

Plaintiff's allegations focus on discriminatory treatment that District Managers Bill Sims, Gregory Phillips, and Gloria Lorenzo allegedly experienced from Defendant, through their Regional Manager, Nic DeAngelis.  Plaintiff alleges four claims under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq*. Specifically, Plaintiff's Complaint asserts claims for:  (1) age-based harassment by DeAngelis as to Sims, Phillips, Lorenzo, and other DMs over the age of 50 in Region 73; (2) constructive discharge with regard to Sims and other DMs over the age of 50 in Region 73; (3) discharge with regard to Phillips, Lorenzo, and other DMs over the age of 50 in Region 73; and (4) termination in retaliation for engagement in protected activity, with regard to Phillips, Lorenzo, and other DMs over the age of 50 in Region 73.  *See* Docket No. 2, pp. 9-11, ¶¶ 51-69.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."

2

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The moving party must show the absence of a genuine issue of material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), with the evidence taken in the light most favorable to the non-moving party, *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).  However, "a party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute[.]" Fed. R. Civ. P. 56(c).

In employment discrimination cases, "[m]any of the highly fact-sensitive determinations involved in these cases are best left for trial and are within the province of the jury."  *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1221 (10th Cir. 2015) (quotation omitted).  "The rule in this Circuit . . . is that an employment discrimination suit will always go to the jury so long as the evidence is sufficient to allow the jury to disbelieve the employer's proffered reason for the employment action."  *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1177 (10th Cir. 1998) (Tacha, J., concurring in part) (citing *Randle v. City of Aurora*, 69 F.3d 441, 451-452 (10th Cir. 1995) ("[I]f this inferential evidence is sufficient to allow a plaintiff to prevail at trial, it is surely sufficient to permit a plaintiff to avoid summary judgment so that the plaintiff can get to trial.").

## III.   FACTUAL BACKGROUND

There appear to be few agreed-upon facts in this case.  At a minimum, Defendant hired Nic DeAngelis, age 28, on July 11, 2016, as a Regional Director (RD) of Region 73 for Dollar General Stores, which falls within this Court's District.  This role included, *inter alia*, supervising up to twelve DMs, who themselves were managing individual Store

3

Managers for Dollar General stores within Region 73. On September 23, 2016, DM Chip Boyles resigned, citing a hostile work environment and that he believed his age (52 years old) was a "real problem" for DeAngelis. *See* Docket No. 100, Ex. 9, p. 10. In response to this resignation, Employee Relations Manager Sarah Price emailed Region 73 DMs to "get a state of the union consensus," *see* Docket No. 110, Ex. 6, p. 5, asking them to provide a "statement involving the status of your region and how you are responding to changes[,]" instructing them to be "as open and honest as possible. If things are good, please state that. I need some response." *See* Docket No. 110, Ex. 6, pp. 11-23. She also interviewed at least one DM. By September 9, 2016, Ms. Price determined that Boyles' allegations were "unsubstantiated," but also recommended coaching for DeAngelis, including "[s]taying away from anything regarding age." *Id.*, p. 5. Senior Director of Field Human Resources Dana Johnson and District Vice President Jeff Mooney met with DeAngelis on September 23, 2016, advising him to, *inter alia*, "[c]ease and desist any/all communication around age as it is a protected status" and to "be professional." *Id.*, p. 7. In October 2016, DeAngelis terminated DM Gregory Phillips, who was 56 years old, and replaced him with a temporary DM who was 36 years old, then a 47-year-old DM. *See* Docket Nos. 100, p. 15; 110, pp. 8, 9, 24; 115, p. 7 ("RTFR 25" & n. 5). He terminated District Manager Gloria Lorenzo, who was 63 years old, in November 2016, and replaced her with a 54-year-old District manager. *Id.* Both Phillips and Lorenzo had provided negative feedback regarding DeAngelis when Price requested a response. Docket No. 110, Ex. 6, pp. 4, 11.

On August 31, 2017, District Manager Bill Sims emailed Mia Savaloja, with a Subject line of "Unprofessional RD [Regional Director] conduct." *See* Docket No. 110,

4

Ex. 12.  He noted that she had a background in HR and that he wanted to speak with her because he was not comfortable with the current HR leaders and that his "RD boasts about they can't so [sic] anything to him anyway."  *Id.*  He requested a one-on-one meeting, as well as confidentiality, to discuss "vulgar language issues, age discrimination issues along with heavy handed management."  *Id.*  She did not see and/or respond to the email.  *See* Docket No. 110, Ex. 14, p. 5.  On December 15, 2017, Sims, 58 years old resigned, citing "terrible language issues," "age discrimination remarks," and "sexual commentary/touching that is over the line."  *See* Docket No. 100, Ex. 1, p. 94.  Defendant, through District Vice President Mooney, terminated DeAngelis's employment on January 10, 2018.  On January 12, 2018, DeAngelis submitted a Termination Dispute Form, stating that the reason he was given for termination was "Age Discrimination/Hostile Environment."  *Id.*, Ex. 1, p. 1.

The facts in dispute include, but are not limited to:  (i) whether Price conducted an investigation or merely a "climate survey" in September 2016; (ii) whether the 2016 allegations against DeAngelis were unsubstantiated or not; (iii) whether Sims properly reported harassment prior to his resignation; (iv) whether DeAngelis fired Phillips and Lorenzo for cause or based on age discrimination and retaliation for engaging in protected activity; and (v) whether DeAngelis was fired for inappropriate conduct or age discrimination/creation of a hostile work environment.

## IV.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A. ADEA Claims in General

Under the Age Discrimination in Employment Act ("ADEA"), "[i]t shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "In most cases, where no direct evidence of discrimination is present, a plaintiff must prove discriminatory intent through the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)." *E.E.O.C. v. Kanbar Prop. Mgmt., L.L.C.*, 2013 WL 4512671, at *3 (N.D. Okla. Aug. 23, 2013); *see also Hazen Paper Co. v. Biggins,* 507 U.S. 604, 612 (1993) (noting that the *McDonnell Douglas* proof standard applies to ADEA claims. To state a prima facie case for an ADEA discrimination claim, a "plaintiff must show: 1) [he or] she is a member of the class protected by the statute; 2) [he or] she suffered an adverse employment action; 3) [he or] she was qualified for the position at issue; and 4) [he or] she was treated less favorably than others not in the protected class." *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir. 1998). "Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the action. If the defendant does so, the plaintiff must show the defendant's proffered reasons are pretextual." *Id.* (citing *Jones v. Unisys Corp.*, 54 F.3d 624, 630 (10th Cir. 1995)). Although often referred to as a "but-for" causation factor, an employer may be held liable for age discrimination even if other factors contributed to the termination "as long as 'age was the factor that made a difference.'" *Jones v. Oklahoma*

6

*City Public Schools*, 617 F.3d 1273, 1277-1278 (10th Cir. 2010) (quoting *Wilkerson v. Shinseki*, 606 F.3d 1256, 1266 (10th Cir. 2010)).

### B.  Count I:  Harassment as to Sims, Phillips, and Lorenzo[1]

To constitute "actionable" harassment, the conduct "must be 'sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment[.]'" *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (quoting *Henson v. Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)).  In determining whether conduct is sufficiently severe or pervasive, the Tenth Circuit considers, under the totality of the circumstances: "(1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's work performance." *Holmes v. Regents of Univ. of Colo.*, 176 F.3d 488, 1999 WL 285826, at *7 (10th Cir. May 7, 1999) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).  This is both an objective and a subjective examination, *id.* (citing *Davis v. U.S. Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998)), which is "'particularly unsuited for summary judgment because it is quintessentially a question of fact.'"  *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007) (quoting *McCowan v. All Star*

---

[1] "[T]he issue of whether a plaintiff may proceed utilizing a hostile environment theory under the ADEA remains unsettled. Although this circuit has not expressly recognized a cause of action for hostile work environment under the ADEA, it has considered a case where the plaintiff raised the issue. For purposes of this case, we assume without deciding [Plaintiff] may advance a hostile work environment claim under the ADEA." *Holmes v. Regents of Univ. of Colorado*, 176 F.3d 488, 1999 WL 285826, at *7 n.6 (10th Cir. 1999) (Table decision) (citing *McKnight v. Kimberly Clark Corp.,* 149 F.3d 1125, 1129 (10th Cir. 1998) (considering and deciding a hostile work environment claim under the ADEA, but not addressing the apparent lack of authority for raising such a theory)).

*Maintenance, Inc.*, 273 F.3d 917, 923 (10th Cir. 2001)).  Thus, "[i]n order to survive summary judgment, the record must support both an inference of a hostile work environment and a basis for employer liability." *Faragalla v. Douglas Cnty. Sch. Dist. RE 1*, 411 Fed. Appx. 140, 154 (10th Cir. 2011) (citing *Ford v. West,* 222 F.3d 767, 775 (10th Cir. 2000).[2]

Here, the Court finds there is a genuine issue of material fact as to whether Plaintiff can show a severe or pervasive hostile work environment sufficient to alter the conditions of employment for Sims, Phillips, Lorenzo, and other DMs.  Plaintiff submitted evidence to rebut Dollar General's assertions that DeAngelis made a "handful of benign comments" about "shaking things up" and bringing in "fresh blood," by noting that on 4-5 occasions he told Phillips, who was fired three months after DeAngelis was hired, that he wanted to build a "millennial team" and referred to older DMs as "grumpy old men."  Additionally, Plaintiff contends the references to "fresh blood" are not benign but in the context of referring to older DMs as "grumpy old men," asking Lorenzo if she can "keep up," and telling her that Dollar General is a "young man's job." *See* Docket No. 110, Ex. 10.  Indeed, Lorenzo reported when asked by HR in September 2016 that DeAngelis had implied she was too old for her job, that he created a hostile work environment, and that she believed her job was in jeopardy because of her age.  Docket No. 110, Ex. 6, p. 4.  Phillips reported concerns to HR in September 2016, including lack of professionalism and being told it was

---

[2] Although *Faragalla* and *Ford* are Title VII cases, "the Tenth Circuit generally interprets the ADEA in tandem with Title VII because the ADEA is based in substantial part on Title VII." *Allen v. CGI Management, Inc.*, 2005 WL 2429750, at *2 (W.D. Okla. Sept. 30, 2005).

"the time of millennials." *See* Docket No. 110, Ex. 6, pp. 6, 11. Both Lorenzo and Phillips expressed concerns for confidentiality.

As to Sims, at the time of the September 2016 inquiry, he wrote a positive report, stating, in part, that everyone needed to "get past [DeAngelis's] age." *Id.*, p. 15. When he resigned in December 2017, however, he cited "terrible language issues with the current leader, age discrimination remarks, and in some cases, even sexual commentary/touching that is over the line." *See* Docket No. 100, Ex. 1, p. 94. He noted that these comments were "surrounded" by references to a "millennial attitude, his millennial team and the lack of ability of the 'grumpy old men group' to stay up with him." *Id.* He continued, asserting that no DM would speak up due to job security concerns without some assurance of confidentiality, and noted that he had attempted to communicate his concerns but he never heard back from "that person" (Savaloja). *Id.* By January 5, 2018, a Dollar General Director of Employee Relations communicated that their investigation showed multiple people substantiating that DeAngelis "treats age protected individuals differently, manages through fear and intimidation, behaves inappropriately with frequent profanity and telling people he doesn't want to hire homosexuals, and that he shows [another] DM favoritism and may have an intimate relationship with her." Docket No. 110, Ex. 28. Additionally, he reportedly told multiple people that he was "untouchable" because someone in management would "protect him." *Id.* While Defendant disputes some of the specifics and the implications that arise, Defendant attempts to discuss individual incidents as opposed to general work atmosphere, which is inappropriate for a hostile environment claim. *See Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1262 (10th Cir.

1998) ("Indeed, the very term 'environment' indicates that allegedly discriminatory incidents should not be examined in isolation. '[O]ne of the critical inquiries in a hostile environment claim must be the *environment*. Evidence of a general work atmosphere therefore—as well as evidence of specific hostility directed toward the plaintiff—is an important factor in evaluating the claim.'") (quoting *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1415 (10th Cir. 1987)).  Thus, Plaintiff sufficiently raises genuine issues of material fact as to the severity and pervasiveness of DeAngelis's actions under the totality of the circumstances.  Accordingly, Defendant is not entitled to summary judgment on this claim.

### C.  Count II:  Constructive Discharge as to Sims

Constructive Discharge.  "The full test for constructive discharge under the ADEA is whether the employer made working conditions so intolerable that a reasonable person would feel []he has no choice but to resign."  *Delopez v. Bernalillo Pub. Sch.*, 2022 WL 17844509, at *6 n.5 (10th Cir. Dec. 22, 2022) (citing *Derr v. Gulf Oil Corp.*, 796 F.2d 340, 344 (10th Cir. 1986); *James v. Sears, Roebuck & Co.*, 21 F.3d 989, 992 (10th Cir. 1994)). "Constructive discharge turns on whether the employer made working conditions intolerable by its illegal discriminatory acts." *Id.* (citing *Derr*, 796 F.2d at 344); *see also Bolden v. PRC Inc.*, 43 F.3d 545, 552 (10th Cir. 1994) ("[N]ot every unhappy employee has an actionable claim of constructive discharge[.]"). This is an "objective, totality of the circumstances standard." *Lara v. Unified Sch. Dist. #£501*, 350 Fed. Appx. 280, 283 (10th Cir. 2009) (citation omitted).  "In other words, the degree of discrimination in the workplace must be such that [Defendant] 'did not allow [Sims] the opportunity to make a free choice regarding his employment relationship.'" *Martinez v. Startek USA, Inc.*, 2020

10

WL 4448717, at *8 (D. Colo. Aug. 2, 2020) (quoting *Sotunde v. Safeway, Inc.*, 716 Fed. Appx. 758, 768 (10th Cir. 2017)). "The plaintiff's burden in a constructive discharge case is substantial and showing that the employer's conduct meets the definition of tangible employment action or adverse employment action is not necessarily sufficient to establish a constructive discharge because a constructive discharge requires a showing that the working conditions imposed by the employer are not only tangible or adverse, but intolerable." *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 805 (10th Cir. 2007) (quotations omitted).

"To assess the voluntariness of a resignation a court examines, based on the totality of the circumstances, whether the employee (1) was given an alternative to resignation; (2) understood the nature of her decision to resign; (3) had a reasonable time in which to decide to resign; and (4) was permitted to select the effective date of resignation." *Compton v. Pappas Rest., Inc.*, 2015 WL 5279719, at *6 (D. Colo. Sept. 10, 2015) (citing *Yearous v. Niobrara Cnty. Mem. Hosp.*, 128 F.3d 1351, 1356 (10th Cir. 1997); *see also Parker v. Bd. of Regents of Tulsa Jr. College*, 981 F.2d 1159, 1162 (10th Cir. 1992)). "For example, an employee who was offered reinstatement to the same position, with the same salary and benefits may have difficulty proving that his resignation was involuntary." *Id.*

Defendant contends it did just that when they fired DeAngelis and asked Sims to stay, but Plaintiff contends Sims was not asked to stay employed after DeAngelis was fired, only that he was asked to stay two days *before* DeAngelis was fired. Indeed, Defendant both faults Sims for "choosing" to work under these conditions for over a year before leaving but also for refusing to return when offered the job. Defendant again cites Sims's

11

failure to offer negative feedback twice when feedback about DeAngelis was solicited, that he did not know why the other DMs had been terminated, that Sims had an affirmative duty to report harassment, and that his report to Savaloja was not an adequate attempt. Plaintiff, however, asserts DeAngelis created working conditions that ultimately forced Sims to resign, *i.e.*, he repeatedly referred to Sims and others as "grumpy old men"; criticized him for not keeping up with a "millennial team"; threated to fire Sims multiple times per week and further used strenuous obscenities over 20 times, causing Sims to fear termination; and at least six times told Sims that management "had his [DeAngelis'] back." Additionally, Plaintiff alleges Sims *did* properly report DeAngelis through Defendant's "open door" policy, but that Savaloja failed to respond, and that the harassment worsened after that time. Plaintiff contends that Sims ultimately reached a point where he was "forced" to quit.

Although the testimony here is "susceptible to multiple interpretations[,]" *Strickland v. United Parcel Serv., Inc.*, 555 F.3d 1224, 1229 (10th Cir. 2009), the Court finds that on this record, a reasonable person could not find, under an *objective* standard, that Defendant allowed Sims's working conditions to become so intolerable that it was nearly impossible for him to continue performing his job such that he had *no other choice* but to quit. *See, e.g.*, *Griddine v. GP1 KS-SB, Inc.*, 2019 WL 1002049, at *22 (D. Kan. Feb. 28, 2019) ("Griddine fails to meet the stringent test for constructive discharge because he lacks proof that Defendants made his working conditions so difficult that a reasonable person in his position would feel compelled to resign."). Accordingly, Defendant is entitled to summary judgment on Count II, the claim of constructive discharge as to Sims.

_Faragher/Ellerth_ Affirmative Defense.   As part of its defense of this case, Defendant raises the _Faragher/Ellerth_ affirmative defense.  "If a reasonable jury could find this to be the case [that an employee was constructively discharged], then the [_Faragher/Ellerth_] affirmative defense is not available . . . because the Supreme Court has found that a constructive discharge is a tangible employment act."  _James v. Frank's Westates Servs., Inc._, 747 F. Supp. 2d 1264, 1273 & n.30 (D. Utah 2010) (citing _Pennsylvania State Police v. Suders_, 542 U.S. 129, 140-141 (2004) ("[A]n employer does not have recourse to the _Ellerth/Faragher_ affirmative defense when a supervisor's official act precipitates the constructive discharge; absent such a 'tangible employment action,' however, the defense is available to the employer whose supervisors are charged with harassment.").  Here, the Court finds Defendant _is_ entitled to summary judgment on Sims's alleged constructive discharge, and thus no tangible employment action was taken that would otherwise have prevented this affirmative defense.

Under the _Faragher/Ellerth_ affirmative defense:

When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, see Fed. Rule Civ. Proc. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any [] harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. While proof that an employer had promulgated an antiharassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense. And while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing any unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will

13

> normally suffice to satisfy the employer's burden under the second element of the defense. No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-808 (1998) (same). "[T]he *Ellerth/Faragher* defense applies in ADEA cases." *Stapp v. Curry Cnty. Bd. of Cnty. Commissioners*, 672 Fed. Appx. 841, 846 (10th Cir. 2016).

The first element raises a genuine issue of material fact as to whether Defendant exercised reasonable care to correct and prevent harassing behaviors. "As for the correction requirement, an employer must 'show that it acted reasonably promptly . . . *when it was given proper notice of [the employee's] allegations* as required under its complaint procedures.'" *Stapp*, 672 Fed. Appx. at 849-850 (quoting *Helm v. Kansas*, 656 F.3d 1277, 1290 (10th Cir. 2011)). Defendant contends the previous investigation was unsubstantiated as to complaints against DeAngelis, while Plaintiff contends it was a mere "climate survey" that did not properly investigate the complaints or support those DMs whose responses were not in favor of DeAngelis.

As to the second element, "an employer satisfies its burden 'by showing that the victimized employee unreasonably delayed in reporting [or never reported] incidents of [prohibited] harassment.'" *Stapp*, 672 F.3d at 849-850 (quoting *Helm*, 656 F.3d at 1291). The second question is whether Sims "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer." *Faragher*, 524 U.S. at 765; *Ellerth*, 524 U.S. at 807-808. Defendant contends Sims had previously reported

positive things about DeAngelis, knew of proper HR procedures, had used them with success in other contexts, and that he further received from DeAngelis in 2017 a good performance review, a raise, and bonuses from DeAngelis, including a bonus he received the day he resigned.  Additionally, Defendant notes that they conducted an investigation after Sims resigned, which *did* result in DeAngelis's termination.

Plaintiff contends that Defendant had an "open door" HR policy, allowing him to report discrimination to any employee, which he did in August 2017.  Furthermore, a previous use of a grievance policy/procedure does not establish an employee is unreasonable as a matter of law in failing to use them to report "abuse at the hands of h[is] supervisor." *Kramer v. Wasatch County Sheriff's Office*, 743 F.3d 726, 750-751 (10th Cir. 2014).  "It is not enough for [Defendant] to simply show that [Sims] did not complain; it must also show that h[is] failure to do so was unreasonable under the circumstances." *Kramer*, *id.* at 751.  Here, Plaintiff asserts that Sims did not follow the HR chain of command because he feared retaliation, he believed DeAngelis was "protected" and/or "untouchable," and his attempted contact with Ms. Savaloja was not returned. Additionally, Plaintiff contends DeAngelis threatened him with retaliation and losing his job, and he knew DeAngelis had already fired two other older DMs.  Defendant challenges the length of time between the terminations of Phillips and Lorenzo and Sims's resignation, but that appears to be a question of fact under the totality of the circumstances here.  Thus, there is evidence Sims feared retaliation *and* lacked confidence in Defendant's remediation efforts.  Here, like *Kramer*, "there was evidence from which a jury could find that the plaintiff's failure to complain was not unreasonable because []he feared retaliation and h[is]

15

prior complaint[] had been ignored[.]" *Tilghman v. Kirby*, 662 Fed. Appx. 598, 602 (10th Cir. 2016) (*Kramer* contrasted with facts in *Tilghman*, where there was "no evidence that Ms. Tilghman had made any prior complaints that went unaddressed or that Mr. Kirby had threatened her job."). Because genuine issues of material fact remain as to both elements, a jury must determine whether Defendant has met these elements.

### D.   Count III:  Discharge as to Phillips and Lorenzo

Next, Phillips and Lorenzo allege that their terminations violated the ADEA. Plaintiff contends that both direct and circumstantial evidence support this claim. As discussed above, the *McDonnell-Douglas* burden-shifting analysis applies with circumstantial evidence. "'To establish a *prima facie* case that her termination violated the ADEA, a plaintiff must plead and prove that 1) she was a member of the protected class of individuals age 40 or older; 2) she was performing satisfactory work at the time; 3) her employment was terminated; and 4) she was replaced by a younger person, although not necessarily one less than 40 years of age.'" *E.E.O.C. v. Goodwill Indus. of Sw. Oklahoma & N. Texas, Inc.*, 2013 WL 5460819, at *11 (W.D. Okla. Sept. 30, 2013) (quoting *Adamson v. Multi Community Diversified Services, Inc.,* 514 F.3d 1136, 1146 (10th Cir. 2008)).

The Court reviewed the briefing of the parties, the evidence submitted, as well as the law, and ultimately concludes that there are genuine issues of material fact as to the reason for DeAngelis's terminations of Phillips and Lorenzo. Plaintiff provided evidence suggesting a reasonable inference that DeAngelis terminated their employment based on their age, while Defendant has evidence suggesting their terminations were based on falsification of records. The Court finds it remains a jury question as to whether the reason

16

for their terminations was pretextual. *See*, *e.g.*, *Hayes v. DG Retail, LLC*, 2019 WL 3239279, at *1 (D. Kan. July 18, 2019) (Plaintiff has "evidence suggesting a reasonable inference that defendant terminated his employment either because of plaintiff's disability (an anxiety disorder) or because of plaintiff's age (55 at the time of termination). Conversely, defendant has evidence suggesting a reasonable inference that plaintiff's employment was terminated based on falsification of company documents. . . . The circumstances surrounding plaintiff's employment termination, the reasons for the termination, and the reason defendant opposed plaintiff's unemployment appeal are for a jury to decide.").

Defendant additionally contends that it is entitled to summary judgment on Phillips's discharge claim because they found after-acquired evidence that he should never have even been hired, due to a previous termination and criminal conviction for theft of company property from a different employer. Defendant contends Phillips lied on his application and never would have been hired had he not done so. *See McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 362 (1995) ("Once an employer learns about employee wrongdoing that would lead to a legitimate discharge, we cannot require the employer to ignore the information, even if it is acquired during the course of discovery in a suit against the employer and even if the information might have gone undiscovered absent the suit."). Plaintiff contends Defendant is not excused from liability here, despite not challenging that Phillips would have been terminated on this ground had Defendant been aware of it, and acknowledges they are only seeking damages for Phillips from his October 2016 through July 2019 employment, which is prior to Dollar General obtaining

the evidence of his previous termination and conviction. *See id*. at 357, 362 ("The object of compensation is to restore the employee to the position he or she would have been in absent the discrimination, but that principle is difficult to apply with precision where there is after-acquired evidence of wrongdoing that would have led to termination on legitimate grounds had the employer known about it. . . . We conclude that a violation of the ADEA cannot be so altogether disregarded. . . . An absolute rule barring any recovery of backpay [as opposed to reinstatement or front pay, which would be "inequitable and pointless"], however, would undermine the ADEA's objective of forcing employers to consider and examine their motivations, and of penalizing them for employment decisions that spring from age discrimination.") (citation omitted).  Defendant is therefore not entitled to summary judgment as to Count III, with regard to either Lorenzo or Phillips.  Admission of evidence related to Phillips's hiring and previous employment history will be addressed in conjunction with a ruling on Plaintiff EEOC's Motion in Limine with Brief in Support [Docket No. 103].

### E.  Count IV:  Discharge in Retaliation for Protected Activity as to Phillips and Lorenzo

Plaintiff's final Complaint allegation is that Defendant retaliated against Phillips and Lorenzo for reporting age discrimination.  Specifically for a retaliation claim under the ADEA, Plaintiff must "show that (1) he or she engaged in protected opposition to discrimination, (2) a reasonable employee would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action." *Hinds v. Sprint/United Mgmt. Co.*,

523 F.3d 1187, 1202 (10th Cir. 2008).   Plaintiff alleges both Lorenzo and Phillips complained to HR about DeAngelis in September 2016, which resulted in retaliation from DeAngelis, including Lorenzo being placed on an "unjustified" performance improvement plan, and in both ultimately being terminated.   Defendant contends DeAngelis was not aware of the statements by Lorenzo and Phillips, and the timing of their termination (one month for Phillips and two months for Lorenzo) is coincidence.   Further, Defendant contends there is no causal connection because Lorenzo was terminated for cause after over two months elapsed from the interview with Lorenzo and her termination.   *See Conroy v. Vilsack*, 707 F.3d 1163, 1181 (10th Cir. 2013) ("It appears clear that, if the adverse action occurs in a brief period up to one and a half months after the protected activity, temporal proximity alone will be sufficient to establish the requisite causal inference; but it is equally patent that if the adverse action occurs three months out and beyond from the protected activity, then the action's timing alone will not be sufficient to establish the causation element.").

The Court again finds summary judgment is not appropriate.  Plaintiff establishes a *prima facie* case of retaliation and likewise "provided sufficient circumstantial evidence of disparate treatment to support a genuine issue of material fact," *Hamilton v. Brennan*, 2019 WL 6498173, at *1 (D. Utah Dec. 3, 2019), as to whether Defendant's justifications for terminating Phillips and Lorenzo were pretextual.  *Id.* (citing *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1125 (10th Cir. 2005) ("[O]nce a plaintiff presents evidence sufficient to create a genuine factual dispute regarding the veracity of a defendant's nondiscriminatory reason, we presume the jury could infer that the employer acted for a discriminatory reason

and must deny summary judgment.")); *see also Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) ("Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.") (quotation omitted)). Summary judgment as to this claim is therefore denied.

Additionally, Plaintiff is requesting emotional distress and punitive damages as part of the retaliation claim. Although "[t]he Tenth Circuit prohibits recovery of either compensatory or punitive damages for an ADEA **discrimination** claim," *Brunner v. GN Bank, N.A.*, 2023 WL 2474683, at *18 (D. Kan. Mar. 13, 2023) (emphasis added) (citing *Villescas v. Abraham*, 311 F.3d 1253, 1259, 1261 (10th Cir. 2002)), it "has not decided whether those damages are available for retaliation claims under the ADEA or ADA[.]" *Id.* Defendant contends that these are prohibited under the law. Plaintiff notes there is a Circuit split as to whether these damages are available and asks the Court to adopt the Seventh Circuit's view that a jury should be allowed to consider compensatory and punitive damages. *See Moskowitz v. Trustees of Purdue Univ.*, 5 F.3d 279, 283 (7th Cir. 1993) ("An exception to the narrow construal of 'legal relief' has been recognized for the case in which the plaintiff charges that he was retaliated against for exercising his rights under the age discrimination law. In *Travis v. Gary Community Mental Health Center, Inc.,* 921 F.2d 108, 112 (7th Cir. 1990), we treated this provision as creating a tort for which the usual common law damages can be obtained.") (citing, *inter alia*, 29 U.S.C. § 623(d); *Soto v. Adams Elevator Equipment Co.,* 941 F.2d 543, 551 (7th Cir. 1991)). The Fifth Circuit,

however, reached the opposite conclusion, finding such damages are not available. *See Vaughan v. Anderson Reg'l Med. Ctr.*, 849 F.3d 588, 592 (5th Cir. 2017) ("*Dean* held that similar language in the ADEA's remedy provision did not make pain and suffering damages available, because such damages would frustrate the ADEA's preference for administrative resolutions. That preference remains in the ADEA, and requires the same result we reached in *Dean* for all 'private actions posited upon the ADEA.'") (quoting *Dean v. American Sec. Inc. Co.*, 559 F.2d 1036, 1038-1039, 1040 (5th Cir. 1977)).

The Court agrees with the Fifth Circuit and the District of Colorado, which states, "the Tenth Circuit, if faced with the issue, would find that neither punitive damages nor emotional distress damages are available for ADEA retaliation claims." *Marshall v. BNSF Ry. Co.*, 2020 WL 128054, at *4 (D. Kan. Jan. 10, 2020) (citing *Bruno v. Western Elec. Co.*, 829 F.2d 957, 967 (10th Cir. 1987)). "[T]he Tenth Circuit . . . did not permit recovery of compensatory and punitive damages for ADEA discrimination claims. And there is no reason to treat retaliation claims differently." *Brunner*, 2023 WL 2474683, at *18 (citing *Perrell v. Financeamerica Corp.*, 726 F.2d 654, 657 (10th Cir. 1984); *Bruno*, 829 F.2d at 967; *Marshall*, 2020 WL 128054, at *4; *Vaughan*, 849 F.3d at 591-592). Accordingly, Plaintiff's request for emotional distress and punitive damages pursuant to the ADEA retaliation claim is foreclosed.

## V.     PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

Plaintiff moved for partial summary judgment with regard to four of Defendant's 31 affirmative defenses, asserting that: (1) Dollar General's "failure to mitigate" defense fails because Lorenzo, Phillips, and Sims mitigated their damages; (2)  EEOC met all

conditions precedent to filing suit, including engaging in conciliation efforts, as well as seeking relief on behalf of individuals who have not filed charges of discrimination; and (3) "failure to investigate" is not a proper affirmative defense.  These relate to Affirmative Defenses 6, 7, 20, and 21.

Failure to Mitigate.  Plaintiff first argues Affirmative Defense 6, related to whether Sims, Lorenzo, and Phillips properly mitigated their damages, should be denied.  As to this defense, "wrongfully discharged claimants have an obligation to use reasonable efforts to mitigate their damages." *EEOC v. Sandia Corp.,* 639 F.2d 600, 627 (10th Cir. 1980).  For "failure-to-mitigate" claims, the employer bears the burden of establishing "(1) that the damage suffered by plaintiff could have been avoided, *i.e.* that there were suitable positions available which plaintiff could have discovered and for which he was qualified; and (2) that plaintiff failed to use reasonable care and diligence in seeking such a position." *McClure v. Indep. Sch. Dist. No. 16*, 228 F.3d 1205, 1214 (10th Cir. 2000) (quotation omitted).  In other words, "an employer must prove *both* that there were suitable, discoverable employment positions for the plaintiff *and* that the plaintiff failed to use reasonable diligence in seeking such employment positions."  *Kluth v. Spurlock*, 2023 WL 6198894, at *32 (D. Colo. Sept. 22, 2023) (citing *Aguinaga v. United Food & Com. Workers Int'l Union*, 993 F.2d 1463, 1474 (10th Cir. 1993)).  *See also Carrasco v. Centura Health Corp.*, 2021 WL 4913983, at *3 (D. Colo. June 18, 2021) ("I see no indication from the Tenth Circuit that it is inclined to [] depart from its clear holding in *Aguinaga* that a defendant must establish **both** prongs of the two-part test.") (citations omitted).

22

As an initial matter, the Court notes that Plaintiff's motion for partial summary judgment on the "failure to mitigate" claim is DENIED AS MOOT as to Defendant Sims only, in light of the above grant of summary judgment as to Sims on Plaintiff's constructive discharge claim. *See, e.g.*, *Sotunde v. Safeway, Inc.*, 2016 WL 10839561, at *14 (D. Colo. Nov. 22, 2016 ("Because the Court holds that Plaintiff has not presented evidence creating a disputed issue of material fact over his constructive discharge claims, the Court need not address Plaintiff's claim for back pay and Defendant's argument pertaining to failure to mitigate."), *reversed on other grounds*, 716 Fed. Appx. 758 (10th Cir. 2017), (citing *Mallinson-Montague v. Pocrnick*, 224 F.3d 1224, 1236 (10th Cir. 2000) ("the Tenth Circuit has long held that an award of back pay is not available absent a showing of constructive discharge.")); *Brown v. Cudd Pumping Servs., Inc.*, 2015 WL 13658664, at *5 (D.N.M. Aug. 17, 2015) ("In view of the Court's dismissal of Plaintiff's constructive discharge claim, the Court denies as moot Defendant's motion for summary judgment on the issue of failure to mitigate damages.").

As to Lorenzo and Phillips, the Court finds Defendant fails to establish the first prong. Although this is a fact-intensive issue where "summary judgment is rarely appropriate," *Carrasco*, 2021 WL 4913983, at *5, the Court finds the circumstances are met here. For this prong, Defendant provided Exhibit E as an exhibit in its response to Plaintiff's Motion. *See* Docket No. 109, Ex. 5 ("Exhibit E"). In the Response itself, Defendant refers to Exhibit E once in the body, in a discussion of jobs available to Sims, with a footnote stating, "Exhibit E contains data received from Monster Worldwide, Inc. establishing that comparable jobs were available in the Oklahoma area at the time

Claimants were seeking employment." *See* Docket No. 109, p. 15, n.8.  The exhibit contains a copy of a subpoena to Monster Worldwide, Inc. ("Monster"), as well as a letter from Monster indicating that the results provided showed job postings containing the word "Manager" for four different addresses, three in Oklahoma and one in Missouri.  *Id.*, Ex. 5, pp. 2-4.  The rest of the exhibit contains approximately 2,818 pages listing jobs in Arkansas, Oklahoma, Missouri, and Oklahoma for various dates between 2016 and 2023. It thus seems plausible that there may have been jobs available for Lorenzo and Phillips during the dates relevant to each of them; however, Defendant has provided no guidance or support for which listing(s) applies to which former District Manager, much less an explanation of how these jobs were suitable.  *See Pena-Flores v. Valley View Hosp. Ass'n*, 2020 WL 136661, at *5 (D. Colo. Jan. 13, 2020) ("The Tenth Circuit requires that employers prove not only the existence of suitable positions, but also the availability of those positions.").  "[O]n a motion for summary judgment, it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without . . . depending on the trial court to conduct its own search of the record." *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (quotation omitted).  As in *Kluth*, "Defendants have not demonstrated a genuine dispute of fact precluding summary judgment in Plaintiff's favor on the failure-to-mitigate defense."  2023 WL 6198894, at *33.  *See also Carrasco*, 2021 WL 4913983, at *5 ("Despite the evidence of hundreds of available RN positions between August 2018 and February 2021 at Centura as reported by Ms. Roberts, and hundreds of available RN positions in 2020 as reported by Ms. Corwin, I cannot grant the motion because Defendants are required to establish not only that jobs were available,

24

but also that the jobs were suitable. I conclude that Defendants have not established that suitable positions were available to Plaintiff during the period of her unemployment.").

Because Defendant fails to establish suitable positions available for either Lorenzo or Phillips, the Court declines to address the second prong. *See Aguinaga*, 993 F.2d at 1474 ("The Union failed its burden of establishing the first prong—*i.e.,* that suitable positions were available for any of the Plaintiffs. Because it failed this prong of its burden, the Union has failed its burden of proof and evidence that supports the second prong of the test—*i.e.,* the individual mitigation efforts of Plaintiffs—are simply irrelevant."). Plaintiff's motion for partial summary judgment is granted as to Defendant's Affirmative Defense No. 6, failure to mitigate as to Lorenzo and Phillips, but denied as moot with regard to Sims.

<u>Conditions Precedent to Suit</u>.  Plaintiff further contends that they are entitled to summary judgment on three of Defendant's affirmative defenses related to conditions precedent to suit: (i) administrative exhaustion (No. 7), (ii) beyond the scope of the administrative charge or EEOC investigation (No. 20), and (iii) good faith efforts at conciliation (No. 21).  Plaintiff contends that "failure to investigate" is an improper affirmative defense, that the requirements for conciliation have been met, and that details of the conciliation process are confidential.  Plaintiff further contends that the EEOC is entitled to seek relief on behalf of Lorenzo and Phillips, even though they did not file a charge of discrimination with the EEOC.  Defendant contends Plaintiff failed to administratively exhaust claims as to Lorenzo and Phillips, that the claims on their behalf are outside the scope of the EEOC charge and investigation, and that the EEOC failed to

properly engage in conciliation. More specifically, Defendant asserts that EEOC, as part of the conciliation process, was required to investigate alleged discrimination with regard to Lorenzo and Phillips, but that Plaintiff's investigative file contained no documents related to Phillips and only one half-page of notes with regard to Lorenzo.

The undisputed facts as to this issue reflect that Sims filed a charge of discrimination on September 7, 2018, alleging Defendant subjected him to unlawful harassment based on his age (as well as constructive discharge), and that Defendant discriminated against other employees, specifically District Managers, because of their age. *See* Docket Nos. 102, p. 9, ¶¶ 32-33; 109, pp. 9-10, ¶¶ 32-33. A "Determination" letter, dated April 14, 2021, indicates that Sims alleged discrimination against himself and other older DMs based on age discrimination, harassment, and a hostile work environment. Docket No. 109, Ex. 8. On July 1, 2021, EEOC Area Director Holly Cole signed a "Notice of Conciliation Failure," stating that conciliation efforts had been unsuccessful and the EEOC was forwarding the charge to the "legal unit for possible litigation." Docket No. 102, Ex. 14.

The Supreme Court instructs in *Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480 (2015) that, *in Title VII cases*, courts "may review whether the EEOC satisfied its statutory obligation to attempt conciliation before filing suit," but that the scope of review is "narrow" and allows for "expansive discretion." *Id.* at 483, 489 (emphasis added) ("recognizing the EEOC's extensive discretion to determine the kind and amount of communication with an employer appropriate in any given case."). Indeed, the Supreme Court refers to this as a "relatively barebones review," *id.* at 494, requiring that "the EEOC afford the employer a chance to discuss and rectify a specified discriminatory practice—

but goes no further." *Id.* at 489.  "That means the EEOC must[: (1)] inform the employer about the specific allegation," describing "both what the employer has done and which employees (or what class of employees) have suffered as a result," and [(2)] "engage the employer in some form of discussion (whether written or oral), so as to give the employer an opportunity to remedy the allegedly discriminatory practice." *Id.* at 494.  Conciliation "need not involve any specific steps or measures," and the EEOC has "discretion over the pace and duration of conciliation efforts." *Id.* at 492.  Thus, "[j]udicial review of those requirements (and nothing else) ensures that the Commission complies with the statute." *Id*. at 494; *see also Equal Emp. Opportunity Comm'n v. Tepro, Inc.*, 2015 WL 12658237, at *3 (E.D. Tenn. Oct. 21, 2015) ("[T]his Court clearly cannot review the *content* of the EEOC's conciliation efforts – that is, the members of the conciliation class or the amount of money demanded for those class members – or the *manner* in which EEOC chooses to attempt conciliation.").

Under the ADEA, although "the EEOC is not formally tasked with investigating ADEA claims, the EEOC must necessarily investigate in order to engage in conciliation, conference, and persuasion." *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1311 (10th Cir. 2005), *abrogated on other grounds by Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166 (10th Cir. 2018), (citing *Occidental Life Ins. Co. v. EEOC,* 432 U.S. 355, 368 (1977) ("[T]he EEOC . . . is a federal administrative agency charged with . . . investigating claims of employment discrimination and settling disputes, if possible, in an informal, noncoercive fashion.").  Because "[a]n ADEA investigation is only required for conciliation, the actual prerequisite to suit[,]" an alleged failure to investigate is not an

affirmative defense. *Equal Emp. Opportunity Comm'n v. New Mexico, Dept. of Corr.*, 2018 WL 1569257, at \*4 & n.8 (D.N.M. Mar. 27, 2018) ("This Court also notes that even under Title VII, it is not clear an EEOC investigation is subject to judicial review.") (citing *Shikles*, 426 F.3d at 1311).

Importantly, "the point of conciliation is to resolve discrimination claims informally through voluntary compliance, not to set up a defense for later." *Equal Emp. Opportunity Comm'n v. W. Distrib. Co.*, 218 F. Supp. 3d 1231, 1242 (D. Colo. 2016) (citing *Occidental*, 432 U.S. at 367-368). As such, "EEOC is not required to discover or identify each class member prior to conciliation or litigation." *EEOC v. New Mexico, Dept. of Corr.*, 2018 WL 1569257, at \*4. Accordingly, any failure to identify Lorenzo and Phillips prior to conciliation is irrelevant as long as Defendant was put on notice of "what the employer has done and which employees (*or what class of employees*) have suffered as a result." *Mach Mining*, 575 U.S. at 494 (emphasis added).

Even a sworn affidavit stating that these obligations have been met is sufficient for the conciliation requirement, unless "the employer provides credible evidence of its own, in the form of an affidavit or otherwise, indicating that the EEOC did not provide the requisite information about the charge or attempt to engage in a discussion about conciliating the claim." *Id.* at 495. In that case, the Court may "conduct the factfinding necessary to decide that limited dispute." *Id.* However, "[b]ecause the remedy to inadequate conciliation is an order staying the case and requiring the parties to conciliate, failure to conciliate is not an affirmative defense." *Equal Emp. Opportunity Comm'n v. Darden Restaurants, Inc.*, 2016 WL 9488709, at \*3 (S.D. Fla. June 1, 2016) ("To qualify

as an affirmative defense, the defense must raise facts which will limit or defeat plaintiff's ability to recover.") (citing *E.E.O.C v. Blinded Veterans Ass'n*, 128 F.Supp.3d 33, 42 (D.D.C. 2015) (citing *Mach Mining*, 575 U.S. at 495)). Accordingly, Plaintiff is entitled to summary judgment on Defendant's Affirmative Defenses 7, 20, and 21. *See* Docket No. 15, pp. 8, 10.

## VI.   RELATED MOTIONS

The parties have also filed additional motions with regard to the evidence supporting and/or opposing Plaintiff's motion for partial summary judgment. Plaintiff moves to strike certain confidential exhibits to Defendant's Response to Plaintiff's Motion for Partial Summary Judgment [Docket No. 117], and Defendant moves for leave to Supplement Evidence in Response to EEOC's Partial Motion for Summary Judgment [Docket No. 122].

Defendant's Response to Plaintiff's partial summary judgment motion contains three exhibits to which Plaintiff objects: (i) a March 10, 2021 letter from EEOC Investigator Michael Talton to a Dollar General representative regarding conciliation (labelled "CONFIDENTIAL – FOR CONCILATION PURPOSES ONLY"), *see* Docket No. 109, Ex. 7 ("Ex. G"); (ii) a June 8, 2021 "Conciliation Regulation Disclosure Compliance Form," *id*, Ex. 9 ("Ex. I"); and (iii) a March 19, 2021 letter from Dollar General's senior employment attorney to Talton responding to the March 10 letter, *id*, Ex. 11 ("Ex. K"). Plaintiff contends all three of these documents should be stricken because documents related to conciliation are confidential and cannot be disclosed without the consent of all parties. Defendant contends Plaintiff's motion to strike is improper and the objections should have been included in the Reply brief, and further asserts that no

authority prohibits disclosure of conciliation materials in an ADEA suit as Title VII language is irrelevant in this context.

The Court finds the documents should be stricken. As discussed above, failure to conciliate is not an affirmative defense, and documents related to conciliation are therefore irrelevant. Moreover, the conciliation process is designed to be confidential, and failure to protect that process "undermine[s] the conciliation process itself, because confidentiality promotes candor in discussions and thereby enhances the prospects for agreement." *Mach Mining*, 575 U.S. at 493; *see also EEOC v. W. Distrib. Co.*, 218 F. Supp. 3d at 1241 (Attachments "consist primarily of the back and forth related to the conciliation process: the precise materials the *Mach Mining* court reminded courts were confidential. . . . I therefore agree with the EEOC that those materials . . . should be stricken."). *Cf. Equal Emp. Opportunity Comm'n v. New Mexico, Corr. Dept.*, 2016 WL 9777238, at *6 (D.N.M. Sept. 30, 2016) (In this ADEA case, "discovery regarding the 'statements made or positions taken' during conciliation is, after *Mach Mining, LLC*, simply not relevant or proportional to the needs of the case."). Accordingly, Plaintiff's Motion to Strike Confidential Exhibits to Defendant's Response to Plaintiff's Motion for Partial Summary Judgment [Docket No. 117] is hereby GRANTED and Exhibits G, I, and K, *see* Docket No. 109, Exs. 7, 9, 11, are hereby STRICKEN. To protect the confidentiality of the documents and avoid further undermining the conciliation process, online access to ECF Docket 109, Exs. 7, 9, and 11 will be restricted to the Court and the current attorneys in this case.

Defendant moves to supplement its response with excerpts from the deposition of EEOC employee Holly Cole. Defendant notes that the excerpts are submitted in support

6:21-cv-00295-GLJ   Document 139   Filed in ED/OK on 02/02/24   Page 31 of 32


of the three relevant affirmative defenses related to the conciliation process.   As the Court finds Plaintiff is entitled to summary judgment on these affirmative defenses in light of *Mach Mining*, Defendant's Motion for Leave to Supplement Evidence in Response to EEOC's Partial Motion for Summary Judgment [122] is DENIED as MOOT.

## VII.   CONCLUSION

In sum:

1.   Defendant's Memorandum in Support of Motion for Summary Judgment [Docket No. 100] is hereby GRANTED IN PART and DENIED IN PART. Defendant is entitled to summary judgment on Count II, the constructive discharge claim as to Sims, and Plaintiff's request for emotional distress and punitive damages pursuant to Count IV (retaliation), but is not entitled to summary judgment on the three remaining claims, Counts I (harassment), III (discharge), and IV (retaliation).   Furthermore, Defendant is not entitled to summary judgment on its Affirmative Defense No. 8 (*Farragher/Ellerth* affirmative defense).

2.    Plaintiff EEOC's Motion for Partial Summary Judgment with Brief in Support [Docket No. 102] is hereby DENIED AS MOOT as to Affirmative Defense 6 (Sims ONLY), and otherwise GRANTED, as to Affirmative Defenses 6 (Phillips and Lorenzo), 7, 20, and 21.

3.   Plaintiff's Motion to Strike Confidential Exhibits to Defendant's Response to Plaintiff's Motion for Partial Summary Judgment [Docket No. 117] is hereby GRANTED.   Exhibits 7, 9, and 11 attached to Docket No. 109 are hereby

STRICKEN.  To protect the confidentiality of the documents and avoid further undermining the conciliation process, online access to ECF Docket 109, Exs. 7, 9, and 11 will be restricted to the Court and the current attorneys in this case.

4. Finally, Defendant's Motion for Leave to Supplement Evidence in Response to EEOC's Partial Motion for Summary Judgment [Docket No. 122] is DENIED as MOOT.

IT IS SO ORDERED this 2nd day of February, 2024.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**