# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

EQUAL EMPLOYMENT                )
OPPORTUNITY COMMISSION,         )
                                )
        **Plaintiff,**          )
                                )
v.                              )        **Case No. CIV-21-295-GLJ**
                                )
DOLGENCORP, LLC d/b/a           )
DOLLAR GENERAL,                 )
                                )
        **Defendant.**          )
                                )

## ORDER

This matter comes before the Court on motions in limine by both Plaintiff and Defendant. For the reasons set forth below, the Court finds that Plaintiff EEOC's Motion in Limine with Brief in Support [Docket No. 103] is GRANTED IN PART and DENIED IN PART and that Defendant's Motion in Limine and Memorandum in Support [Docket No. 101] is GRANTED IN PART and DENIED IN PART.

## PROCEDUREAL HISTORY

Plaintiff EEOC brought this action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq*., against Dolgencorp, LLC d/b/a Dollar General on behalf of three former district managers: Bill Sims, Gregory Phillips and Gloria Lorenzo (collectively, the "Claimants"). *See* Docket No 2. Plaintiff alleged four claims under the ADEA. Specifically, Plaintiff's asserted claims for: (1) age-based harassment by Regional Manager Nic DeAngelis as to Sims, Phillips, Lorenzo, and other district managers over the

1

age of 50 in Region 73; (2) constructive discharge with regard to Sims and other district managers over the age of 50 in Region 73; (3) discharge with regard to Phillips, Lorenzo, and other district managers over the age of 50 in Region 73; and (4) termination in retaliation for engagement in protected activity, with regard to Phillips, Lorenzo, and other district managers over the age of 50 in Region 73. *See* Docket No. 2, pp. 9-11, ¶¶ 51-69.

On February 2, 2024, the Court granted in part and denied in part Defendant's Memorandum in Support of Motion for Summary Judgment [Docket No. 100] and granted in part and denied in part Plaintiff's Motion for Partial Summary Judgment with Brief in Support [Docket No. 102]. *See* Docket No. 139. Specifically, the Court granted Defendant summary judgment on Count II, the constructive discharge claim as to Sims, and Plaintiff's request for emotional distress and punitive damages pursuant to Count IV (retaliation), but denied summary judgment on the three remaining claims, Counts I (harassment), III (discharge), and IV (retaliation). The Court also denied summary judgment on Defendant's Affirmative Defense No. 8 (Farragher/Ellerth affirmative defense). As to Plaintiff's motion, the Court granted summary judgement on Defendant's affirmative defenses for failure to mitigate (Affirmative Defense No. 6) and conditions precedent to suit (Affirmative Defense Nos. 7, 20 and 21).

## ANALYSIS

### I. Applicable Law

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing Fed.

R. Evid. 103(c); cf. Fed. R. Civ. P. 12(e)). As such, "[t]he purpose of a motion in limine is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Mendelsohn v. Sprint/United Mgmt. Co.*, 587 F.Supp.2d 1201, 1208 (D. Kan. 2008), *aff'd*, 402 F. App'x 337 (10th Cir. 2010) (internal quotations omitted); *see also Dry Clean Super Ctr., Inc. v. Kwik Indus., Inc.*, 2012 WL 503510 *4 (D. Colo. Feb. 15, 2012) ("The purpose of a motion in limine is to allow the Court to decide evidentiary issues in advance of trial to avoid delay and ensure an evenhanded and expeditious trial."). Motions in limine "are designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Graves v. Dist. of Columbia*, 850 F.Supp.2d 6, 10 (D.D.C. 2011) (quotation marks omitted).

To exclude evidence on a motion in limine "the evidence must be inadmissible on all potential grounds." *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F.Supp.2d 844, 846 (N.D. Ohio 2004). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT & T Tech., Inc.*, 831 F.Supp. 1398, 1400 (N.D. Ill. 1993). However, "the district court may change its ruling at any time for whatever reason it deems appropriate." *Jones v. Stotts*, 59 F.3d 143, 146 (10th Cir. 1995) (citations omitted); *see also Luce*, 469 U.S. at 41 ("The ruling is subject to change when the case unfolds . . . [E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling."). Alternatively, a judge may decline to rule on an issue raised via limine motion, preferring

3

to "await developments at trial before [so] ruling" to allow the "decision [to] be better informed by the context, foundation, and relevance of the contested evidence within the framework of the trial as a whole." *Graves*, 850 F. Supp. 2d at 11 (quotation marks and citations omitted).

## II. Plaintiff's Motion in Limine

### 1. *Claimants' work performance, conduct, and reasons for separation of employment from employers other than Dollar General*[1]

Plaintiff seeks to exclude all evidence of Claimants' performance, conduct, and reasons for separation from employers other than Dollar General as irrelevant to any claim or defense. *See* Docket No. 103, pp. 2-3. Defendant asserts that such evidence is relevant to mitigation of damages by Claimants. *See* Docket No. 114, pp. 1-2.

As noted above, the Court granted Plaintiff summary judgement on the mitigation of damages issue asserted in Defendant's Affirmative Defense No. 8. The Court also granted summary judgement as to Sim's constructive discharge and, thus, he has no mitigation of damages issues. Furthermore, as noted by Plaintiff, it only seeks lost wages damages for Phillips up to his time of the termination from Dollar Tree, which was his employer after he was discharged from Defendant. Therefore, evidence related to Phillips's Dollar Tree termination is not relevant. Plaintiff's Motion is granted.

---

[1] Phillips' prior termination, theft conviction and "falsified" employment application are addressed collectively below.

2. *Communications with attorneys regarding this case, including any private representation*

Plaintiff seeks to exclude all evidence based on attorney-client privilege pursuant to 12 O.S. § 2502(B) regarding Claimants' communications with private attorneys and whether Claimants retained a private attorney. *See* Docket No. 103, pp. 3-4. Plaintiff subsequently identifies the four specific communications it seeks to exclude: 1) communications Lorenzo and Phillips had with an unidentified attorney from whom they initially sought representation; 2) communications between Sims and his attorney, Larry Schumaker; 3) communications between Lorenzo and Schumaker regarding a possible witness statement; and 4) communications between EEOC attorneys and Claimants prior to conciliation. *See* Docket No. 114, p. 8.[2] Defendant argues that any Claimants' interactions with an attorney with whom they do not have an attorney-client relationship or with whom no legal advice was sought or obtained does not fall under the attorney-client privilege. *See* Docket No. 108, pp. 7-8. Defendant further argues that any communications between Plaintiff's attorneys and Claimants before statutorily mandated conciliation is not protected by the privilege. *Id*.

As an initial matter, "the attorney-client privilege is designed to shield the client's confidential disclosures and the attorney's advice. To "establish the privilege, it must be shown that the status occupied by the parties was that of attorney and client and that their communications were of a confidential nature." *Sims v. Travelers Ins. Co.*, 2000 OK CIV

---

[2] Because Plaintiff did not articulate these four instances covered by its motion in limine until its Reply brief, Defendant was left to guess as to the specific evidence Plaintiff sought to exclude and deprived the Court of more fulsome argument.

APP 145, ¶ 8, 16 P.3d 468, 470. "To establish attorney-client privilege, the proponent must show: (1) a communication; (2) made between privileged persons; (3) in confidence; (4) for the purpose of seeking, obtaining, or providing legal assistance to the client." *Stockton v. Housecalls Home Health Services, Inc.*, 2007 WL 9872747, *3 (N.D. Okla. June 15, 2007) (citing Restatement (Third) of Law Governing Lawyers § 68 (2007)). The party asserting privilege has the burden of establishing a basis for his claim. *In re Foster*, 188 F.3d 1259, 1264 (10th Cir. 1999).

      i.    *Lorenzo's and Phillips' communications with an attorney regarding potential legal representation*

While Plaintiff concedes that Lorenzo and Phillips did not retain an attorney, it seeks to shield as privileged all communications they had with an attorney regarding potential legal representation. As an initial matter, the attorney-client privilege does not shield the fact that Lorenzo and Phillips retained an attorney or communicated with an attorney in contemplation of retaining such attorney. *Riley v. Union Pacific R.R. Co.*, 2010 WL 1946286, *1 (E.D. Okla. May 13, 2010); *see also Dent v. BNSF Ry. Co.*, 2021 WL 1977055, *1 (W.D. Okla. May 17, 2021) ("To the extent Plaintiff's hiring of an attorney 'do[es] not reflect any confidential communication, the subject would not be barred by the attorney-client privilege.'") quoting *Smith v. BNSF Ry. Co.*, 2011 WL 13176827, at *3 (W.D. Okla. Sept. 13, 2011)). Nonetheless, to the extent Lorenzo's and Phillips' communications with the attorney were "for purpose of seeking" legal assistance, then the content of such communications are protected by the attorney-client privilege. *See Stockton*, 2007 WL 9872747, *3.

6

### ii.      Sim's communications with Larry Schumaker about this case

Plaintiff asserts that Schumaker was Sim's attorney during the EEOC investigation phase of this case.  *See* Docket No. 114, p. 9.  While Schumaker apparently represented himself to be Sims' attorney in August 2019, *Id*., Ex. 2, based on the excerpted deposition transcript provided, it is unclear to what extent Sims considered Schumaker his attorney and the time period of such representation.  *Id*., Ex. 3.  For example, Sims indicates he did not believe Schumaker represented him but was giving him some legal advice for a few months around the time he resigned from Defendant in December 2017.  Therefore, any communications Sims had with Schumaker around December 2017 is likely to be covered by the attorney-client privilege because such communications were for the purpose of seeking or obtaining legal assistance.  Is it unclear, however, what if any communications Sims had with Schumaker after early 2018.  As a result, Plaintiff fails to meet its burden of establishing a basis for any privilege claim for any communications between Sims after early 2018.  Therefore, the Court declines to make any further findings regarding any privileged communications between Sims and Schumaker after early 2018 and instead will "await developments at trial before [so] ruling" to allow the "decision [to] be better informed by the context, foundation, and relevance of the contested evidence within the framework of the trial as a whole."  *Graves*, 850 F. Supp. 2d at 11.

### iii.      Communications between Lorenzo and Schumaker

Plaintiff seeks to exclude communications between Lorenzo and Schumaker regarding a witness statement in an unrelated lawsuit on the basis that it is irrelevant rather than attorney-client privilege.  *See* Docket No. 114, p. 9.  Because the Court was not

provided any information or context for the contents of the communications or the subject matter of the unrelated lawsuit, it declines to rule on this issue at this time.

> iv.   *Communications between Claimants and EEOC attorneys prior to conciliation*

Plaintiff seeks to exclude communications between Claimants and the EEOC prior to conciliation as irrelevant.   The Court again has no basis upon which to evaluate the relevance of the statements Plaintiff seeks to exclude because it does not know the statements' content or the context in which they were made.   Therefore, the Court denies Plaintiff's Motion for this category of communication.   "[A] court is almost always better situated during the actual trial to assess the value and utility of evidence." *Romero v. Helmerich & Payne Int'l Drilling Co.*, 2017 WL 3268878, at *2 (D. Colo. Aug. 1, 2017) (internal quotation marks omitted)).

### 3.  Sims' EEOC charge of discrimination

Plaintiff seeks to exclude evidence of Sims' charge of discrimination.   Plaintiff argues that because this proceeding is de novo, any allegations made prior to it are irrelevant and could lead to "minitrials" as to why Plaintiff does not allege a claim that Defendant engaged in a pattern and practice of age discrimination as alleged in Sim's charge.   *See* Docket No. 103, pp. 4-5.   Defendant argues that Sims' sworn statements in the charge of discrimination is relevant because all allegations that Plaintiff relies on to prove its case are relevant, that such charge is also valid impeachment evidence and Plaintiff's speculative concerns regarding undue prejudice do not outweigh the probative value of such evidence.   *See* Docket No. 108, pp. 8-10.

Beyond vague statements that Sims' charge of discrimination contains allegations that Defendant "engaged in a pattern and practice of age discrimination," neither party provides any details of what specific statements Sim's made in the charge. Nonetheless, Sims' sworn statement regarding his discriminatory treatment based on his age by Defendant is potentially relevant and likely could be the basis for impeachment. Thus, the Court is in no position at this time to determine the relevance or the potential unfair prejudice such evidence may involve. Because "the evidence must be inadmissible on all potential grounds[,]" *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F.Supp.2d at 846, the Court defers any decision on it "until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners*, 831 F.Supp. at 1400. Therefore, Plaintiff's Motion on this issue is denied.

### 4. Evidence of Sims' emotional state following his separation from Defendant

Plaintiff seeks to exclude all evidence of Sim's emotional distress after the conclusion of this employment with Defendants because Plaintiff does not seek emotional distress damages on behalf of Sims. *See* Docket No. 108, p 5. Defendant argues that Sims' emotional distress during his employment with Defendant is not relevant but any emotional distress, including alcohol abuse, after this employment is relevant to his mitigation of damages. *See* Docket No. 108, p. 11. In particular, Defendant argues that Sims' emotional distress and alcohol abuse post-employment is relevant to his ability to work and mitigate his backpay damages.

As previously ordered by the Court, Plaintiff's claim for Sims' constructive discharge was dismissed and Sims is not entitled to any backpay damages. *See* Docket No. 139, p. 23. Therefore, to the extent Sims' emotional distress and alcohol abuse is only relevant to the issues of his failure to mitigate his backpay damages, such evidence is irrelevant. Plaintiff's Motion on this issue is denied.

5. *Phillips prior criminal conviction and misrepresentation on his Dollar General application*

Plaintiff seeks to exclude evidence related to Phillips' termination from an employer *prior* to working for Defendant, his prior criminal conviction and his failure to include such termination/conviction on his Dollar General employment application. *See* Docket No. 108, pp. 2-4. Phillips was terminated from Lowe's in 2005 for keeping a gift card with a value of $38. Phillips was subsequently charged with theft and pled guilty. *See* Docket No. 114, p. 3. Phillips' was sentenced to 15 hours of community service and his conviction was later expunged. *Id*. On his Dollar General employment application, Phillips answered "no" to the question of whether he had ever been convicted of a crime other than a minor traffic violation. *Id*. Defendant asserts this information is relevant to its "after-acquired evidence defense" and is proper impeachment evidence. *See* Docket No. 108, pp. 3-4.

First, Phillips prior termination is not relevant to Defendants' after-acquired evidence defense. The after-acquired evidence defense provides that a plaintiff's claim for backpay is cut off as of the date the defendant-employer learns of the employee's wrongdoing that would have been a basis for termination had the employer known the information at the time of the discharge that is the subject of the claim. *See*, *e.g.*, *Medlock*

*v. Ortho Biotech, Inc.*, 164 F.3d 545, 554 (10th Cir. 1999).   Defendant learned of Phillips' termination from Lowes during his August 2023 deposition.   *See* Docket No. 114, Ex. 1. Plaintiff stipulates that Phillips' backpay claim is cut off in July 2019, well before Defendant learned of his termination.   Thus, the after-acquired evidence was obtained by Defendant after Phillips' backpay claim cut off and is not relevant to the backpay issue.

Second, Defendant asserts Phillips' prior conviction and "falsified" employment application are relevant for impeachment of his credibility under Fed. R. Evid. 404(b).   *See* Docket No. 108, p. 4.   Specifically, Defendant argues evidence of dishonesty and propensity for untruthfulness may be admitted to impeach a witness' credibility and is not inadmissible character evidence.   *Id*.   Plaintiff responds that the proposed evidence is inadmissible character evidence under Fed. R. Evid. 404, is irrelevant because Plaintiff stipulated to the backpay cut off and that the employment application was not false because the criminal conviction was expunged.   *See* Docket No. 114, pp. 5-6.

While character evidence is generally inadmissible to prove that a person acted in accordance with the particular character trait, Fed. R. Evid. 404(a)(3) provides it may be admitted under Fed. R. Evid. 607, 608 and 609.   Fed. R. Evid. 404.   Under Fed. R. Evid. 607, any party may attack a witness' credibility.   However, the ability to attack a witness' credibility at trial is subject to certain limitations.   Except for a criminal conviction under Rule 609, "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608(b).   Specific instances of a witness' prior misconduct may be used, however, to impeach the witness "only to the extent the misconduct reflects on the witness'[ ] character

11

for truthfulness." *United States v. Beltran–Garcia*, 338 Fed. Appx. 765, 770 (10th Cir. 2009) (unpublished); Fed. R. Evid. 608(b).  Further, under Fed. R. Evid. 609(a)(1), evidence of a witness' prior criminal conviction may be introduced to impeach the witness only if the elements of the crime required proving a dishonest act or false statement.  Convictions more than ten years old are also generally not admissible unless the probative value of the evidence substantially outweighs its prejudicial effect and the proponent of the evidence gives the adverse party reasonable written notice of its intent to use this evidence.  Fed. R. Evid. 609(b).  Lastly, evidence of a conviction is inadmissible if it "has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding that the person has been rehabilitated. . . ."  Fed. R. Evid. 609(c)(1).

Defendant seeks to impeach Phillips with both his past conviction of theft of a $38 gift card and the specific instance of his prior termination and "false" statement on his Dollar General employment application.  Any impeachment of Phillips regarding his past theft conviction is inadmissible.  First, Phillips' theft conviction does not appear to involve an element proving a dishonest act or false statement.

> [C]rimes such as perjury or subor[ ]nation of perjury, false statement, criminal fraud, [or] embezzlement" and "those crimes characterized by an element of deceit or deliberate interference with the truth" are per se crimes of dishonesty or false statement.  *United States v. Mejia-Alarcon*, 995 F.2d 982, 989 (10th Cir. 1993) (quotations omitted). "[C]rimes like burglary, robbery, and *theft*" fall outside the per se category.  *Id*.; *see also United States v. Dunson*, 142 F.3d 1213, 1215 (10th Cir. 1998).

*Burke v. Regalado*, 935 F.3d 960, 1017 (10th Cir. 2019) (emphasis added).  *See also Taylor v. Owners Ins. Co.*, 2020 WL 12499910, at *2 (D. Colo. May 20, 2020) (citing *United States v. Glenn*, 667 F.2d 1269, 1273 (9th Cir. 1982) ("Generally, crimes of violence, theft

crimes, and crimes of stealth do not involve 'dishonesty or false statement' within the meaning of rule 609(a)(2). Although such crimes may indicate a lack of respect for the persons or property of others, they do not bear directly on the likelihood that the defendant will testify truthfully.")). Second, Phillips' theft conviction is more than ten years old and its probative value does not substantially outweigh is prejudicial effect. The probative value of an old conviction for the theft of a $38 gift card is minimal at best, whereas the risk of prejudice is substantial.

Any attempt to impeach Phillips regarding his prior termination or any "falsified" statement on his Dollar General employment application is also inadmissible. First, the termination and alleged false statement is from 2005 and his 2007 employment application, respectively, so they are not particularly temporally relevant to his current character for truthfulness. Second, impeachment on any alleged false employment application statement risks devolving into a minitrial over whether Phillips' answer was false. Phillips testified that because his conviction had been expunged, he believed he correctly answered "no" to the application question of whether he had ever been convicted of a crime. *See* Docket No. 114, Ex. 1. While an exclusion of a conviction under Fed. R. 609(c)(1) requires a finding that the expungement was based on a finding of rehabilitation and neither party provides the Court with the applicable state law to make such a finding, *see*, *e.g.*, *U.S. v. Moore*, 556 F.2d 479, 484 (10th Cir. 1977) ("Rule 609(c), then, precludes the use of a prior felony conviction for impeachment purposes where the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure. However, whether there has been such an expungement, and the extent of such expungement, must

in the instant case be determined by reference to [state] law); *U.S. Xpress Enterprises, Inc. v. J.B. Hunt Transp., Inc.*, 320 F.3d 809, 816 (8th Cir. 2003) (requiring a finding that the witness had been rehabilitated in order to exclude evidence of the witness's prior conviction), Phillips' understanding and intent are relevant as to whether his statement was false for impeachment purposes.   A minitrial on Phillips' understanding and intent in answering the application question is irrelevant to the issues in this case and risks confusing the jury.   Lastly, delving into whether the employment application statement was false will necessarily bring in Phillips' criminal conviction that the Court already ruled is inadmissible, and, therefore, any probative value is substantially outweighed by the unfair prejudicial effect under Fed. R. Evid. 403.   For these reasons, Plaintiff's Motion to exclude Phillips' previous termination, previous conviction and any alleged false statement on his Dollar General employment application is granted.

### 6.  *Evidence of other legal proceedings*

In support of its request to exclude evidence of other legal proceedings, Plaintiff references Phillips prior conviction and Lorenzo's prior bankruptcy.   The Court addresses Phillips' prior conviction above.   Defendant represents that it does not oppose excluding evidence of Lorenzo's bankruptcy.   *See* Docket No. 108, p. 12.   Therefore, Plaintiff's Motion on these issues is granted.

## III.   Defendant's Motion in Limine

### *1 & 2. No mention of or request for an award of punitive damages and emotional distress damages for Sims*

Defendant seeks the exclusion of any mention of or request for punitive damages for any Claimant and emotional distress damages for Sims.  *See* Docket No. 101, pp. 2-3. As previously ordered by the Court, neither punitive damages nor emotional distress damages are available under the ADEA.  *See* Docket No 139, pp. 20-21.  Therefore, the Defendant's Motion on punitive and emotional distress damages is granted.

3.    *No mention of any EEOC Determination or Investigation*

Defendant seeks to exclude any reference to or evidence of any determination by Plaintiff in this matter, the sufficiency or implications of Plaintiff's investigation of any claim by Sims or others, and communications between Plaintiff and Defendants related to the investigation because such evidence is irrelevant and unfairly prejudicial.  *See* Docket No. 101, p. 3.  Plaintiff argues that Defendant fails to meet its burden of demonstrating the refenced evidence is irrelevant or unfairly prejudicial.  *See* Docket No. 107, p. 3.  Plaintiff further represents it will not introduce the Letter of Determination as evidence unless Defendant challenges the jurisdiction of this Court over the case.  *Id*., p. 4.

The EEOC investigated Defendant for violations of the ADEA and issued a Letter of Determination "finding reasonable cause to believe that the ADEA was violated."  *See* Docket No. 2, ¶¶ 6 & 7.  Subsequently, the EEOC issued Defendant a Notice of Failure of Conciliation.  *Id*., ¶ 10.  No further details are provided in the parties' briefs regarding the EEOC's findings or the substance of any communications between the EEOC and Defendant that are the subject of Defendant's motion for the Court's consideration and evaluation for relevance or potential unfair prejudice.

15

As to Defendant's Rule 403 objection, the rule in the Tenth Circuit is that district "courts have discretion in deciding whether to admit EEOC determinations into evidence." *Nulf v. Int'l Paper Co.*, 656 F.2d 553, 563 (10th Cir. 1981); *see also Tuffa v. Flight Servs. & Sys., Inc.*, 644 F. App'x 853, 855 n.3 (10th Cir. 2016) (unpublished); *Cervantes v. Wal-Mart Stores, Inc.*, 1 F. App'x 762, 765 (10th Cir. 2001 (unpublished) ("a district court has discretion whether to admit an EEOC probable cause determination at trial"). Where the determination merely summarizes the parties' evidence and reaches a conclusion, it is reasonable to question the probative value of the exhibit and find its value is substantially outweighed by a likelihood that the jury would misunderstand a reasonable cause finding or give undue deference to the EEOC's expertise in discrimination matters. *See*, *e.g.*, *Denny v. Hutchinson Sales Corp.*, 649 F.2d 816, 822 (10th Cir. 1981) (affirming exclusion of agency probable-cause finding under Rule 403); *see also Hall v. Western Prod. Co.*, 988 F.2d 1050, 1058 (10th Cir. 1993) (affirming exclusion of agency no-cause finding because "all the evidentiary matter before the [agency] could be presented to the jury" and "the only purpose to be served by admitting into evidence the [agency] report would be to suggest to the jury that it should reach the same conclusion") (internal quotation omitted). Plaintiff represents it does not intend to introduce the Letter of Determination, unless jurisdiction is challenged, and, therefore, Defendant's Motion is granted as to the Letter of Determination. To the extent Defendant challenges the Court's jurisdiction, the admissibility will be reconsidered.

Because Defendant also makes a broad and non-specific request to exclude evidence of communications and "implications" of the EEOC's investigation, Defendant's Motion as to those matters in is denied. While the Court finds that communications between the EEOC and Defendant and investigation implications could be admissible, upon proper foundation, as relevant, the Court notes that the parties have not explained what communications or the contents of such communications are at issue. Accordingly, the communications between the EEOC and Defendant and investigative materials are not deemed inadmissible at this time. *See Tulsa Zoo Management, Inc. v. Peckham Guyton Albers & Viets, Inc.*, 2019 WL 1562039, at *2 (N.D. Okla. March 6, 2019), citing *Walsh v. United States*, 2009 WL 3755553, at *2 (N.D. Okla. Mar. 31, 2009) ("A court is within its discretion to deny a motion in limine that fails to identify the evidence with particularity or to present arguments with specificity. Motions in limine which exclude broad categories of evidence should rarely be granted. The better practice is to address the issues of admissibility as they arise."). Therefore, Defendant's Motion is denied as to remainder of this category.

4.      *No mention of alleged inappropriate comments/acts unrelated to age*

Defendant seeks to exclude evidence of allegations of wrongful conduct by DeAngelis that have no bearing on Plaintiff's allegations of age discrimination. *See* Docket No. 101, p. 3. Defendant describes the evidence it seeks to exclude in its Motion as allegations that: DeAngelis spoke in a negative manner related to Nichelle Shillingford, unrelated to her age; DeAngelis made comments about certain employees being overly

sensitive; reference to any person's race; and derogatory comments to or about any person based on any protected category other than age. *Id*., pp. 3-4. Like Plaintiff, Defendant waited until its Reply to more fully describe the specifics of the evidence it seeks to exclude. In its Reply, Defendant identifies the evidence it seeks to exclude as: racial and/or sexual statements about Shillingford or comments about lesbians; and derogatory comments about gays and lesbians. *See* Docket No. 113, pp. 2-4. Plaintiff argues the inappropriate comments and acts of DeAngelis unrelated to age are relevant to his termination and Defendant's anticipated "equal opportunity' harasser defense. *See* Docket No. 107, pp. 4-5. Unfortunately, neither party identifies most of the testimony or documents at issue for the Court to analyze.

As an initial matter, the "equal opportunity" harasser defense appears to be primarily applied in sex discrimination cases in which the argument is that the conduct is not actionable because the harasser harassed individuals of both sexes and, thus, did not discriminate against the claimant based on or because of the claimant's sex. *See*, *e.g.*, *Gray v. Koch Foods, Inc.*, 580 F.Supp.3d 1087, 1108 (M.D. Ala. 2022) (describing "'the equal opportunity harasser defense,' whereby harassers evade Title VII liability if they harass both sexes equally and therefore are technically not discriminating 'based on sex.'"); *Armintrout v. Bloomingdale's Pizza, Inc.*, 2007 WL 837279, at *5 (N.D. Ill. March 13, 2007) ("the so-called 'equal-opportunity' sexual harasser with respect to men and women, even such a harasser who uses sexually charged or vulgar words or behavior, is outside the ambit of Title VII because there is no discrimination occurring on the basis of sex.").

Neither party cites any authority on the application or the contours of the equal opportunity harasser defense in the context of age discrimination.  While such a corollary defense in the age discrimination context might be that DeAngelis treated employees equally bad regardless of age, the evidence at issue is not so easily limited or categorized as it is in sex discrimination cases.  For example, Defendant appears to argue that only facts related to DeAngelis yelling and swearing at employees of all ages is admissible.  Such a narrow application, however, ignores that yelling or swearing is inherently neutral conduct whereas sexual touching or comments is explicitly sexual in nature.  This argument also ignores DeAngelis' alleged use of crude language that could be considered both swearing or unprofessional and pejorative language directed at a protected class.  *See*, *e.g.*, DeAngelis' deposition at p. 204, lns. 13-16.  Plaintiff argues that Defendant terminated DeAngelis for "inappropriate conduct," thereby making these other instances of alleged inappropriate conduct unrelated to age relevant in this case.  Plaintiff offers no support for this assertion.  While it is possible that issues surrounding Defendant's investigation of complaints about DeAngelis' conduct, including his non-age based inappropriate conduct, the timing of the complaints and the investigation, and the timing of DeAngelis' termination, could potentially be relevant, based on the information before the Court it is not entirely clear that it is.  In this context, however, the Court cannot say based on the limited information before it that evidence of DeAngelis' alleged inappropriate conduct unrelated to age is irrelevant for any purpose, particularly as to Defendant's investigation or the timing of DeAngelis' termination.

19

Although Defendant also seeks the exclusion of statements regarding alleged inappropriate conduct on the basis that they are hearsay, with one exception, it offers no details or any argument as to any precise statements or documents and why such statements or documents are inadmissible hearsay. *See* Docket No. 101, p. 3. In response, Plaintiff argues the statements are non-hearsay because they are not offered for the truth of the matter asserted, were made by DeAngelis while he was an agent of Defendant and, to the extent the statements are hearsay, they fall under the business records exception. *See* Docket No. 107, pp. 5-6. Although Plaintiff offers various statements in quotations, it does not direct the Court to any specific testimony or documents to which it is referring to allow an evaluation of such statements in context. *Id*., p. 4.

Under the Federal Rules of Evidence, hearsay is a statement that the declarant does not make while testifying at the current trial or hearing; and which a party offers in evidence to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c). Hearsay is inadmissible unless federal statute or the Federal Rules of Evidence provide otherwise. Fed. R. Evid. 802. Finally, "hearsay within hearsay" is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule. Fed. R. Evid. 805.

Plaintiff first argues that the statements at issue are not being offered for the truth of the matter asserted. While such a use of the statements would take them outside the hearsay definition, Plaintiff offers no other purpose it intends for the statements other than, presumably, as a basis for DeAngelis' termination. *See* Docket No. 107, p. 5. At best,

20

however, such a use intermingles the statements truthfulness with their usage – presumably Defendant would not terminate an employee based on untruthful or unreliable accusations.

Plaintiff also argues that the statements are not hearsay under Fed. R. Evid. 801(d)(2)(D) because they were made by DeAngelis while he was an agent and employee of Defendant and the business records exception under Fed. R. Evid. 803(6). *Id.*, pp. 5-6. Plaintiff ignores, however, that, to the extent the Court has been able to identify the source of any of the alleged statements, they are often out of court statements by others repeating alleged statements by DeAngelis. Indeed, the one specific statement by Sims identified by Defendant is clearly hearsay without any exception. *See* Docket No. 113, n.1. Moreover, some of the statements the Court is aware of on its own are Defendant's employees summarizing statements of other Defendant employees about statements allegedly made by DeAngelis. Thus, those statements raise multiple hearsay within hearsay issues under Fed. R. Evid. 805 and this issue is not addressed by Plaintiff. As a result, while the Court has concerns regarding the potential hearsay of this evidence, except for the one example cited above, it has not been provided sufficient identification of the testimony or documents at issue, the context or the proposed use for such testimony or documents to properly evaluate questions of admissibility.

Lastly, Defendant seeks the exclusion of this evidence under Fed. R. Evid. 403. Federal Rule of Evidence 403 permits the court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or

needlessly presenting cumulative evidence." Fed. R. Evid. 403; *United States v. Cox*, 684 F. Appx. 706, 708 (10th Cir. 2017). "Rule 403 sets a high bar for reversing a district court's decision to admit relevant evidence. We have previously stated, 'our law favors admission of all relevant evidence not otherwise proscribed.'" *United States v. Watson*, 766 F.3d 1219, 1241 (10th Cir. 2014) (quoting *United States v. Irving*, 665 F.3d 1184, 1213 (10th Cir. 2011)). Excluding evidence under Rule 403 is therefore "an extraordinary remedy [that] should be used sparingly." *Watson*, 766 F.3d at 1241 (quoting *United States v. Rodriguez*, 192 F.3d 946, 949 (10th Cir. 1999)); *Boardwalk Apartments, L.C. v. State Auto Property and Cas. Ins. Co.*, 816 F.3d 1284, 1289 (10th Cir. 2016). In deciding whether to exercise this extraordinary power, the Court must give the evidence its maximum reasonable probative force and the minimum reasonable risk of unfair prejudice or confusion. *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1274 (10th Cir.2000); *SEC v. Peters*, 978 F.2d 1162, 1171 (10th Cir.1992).

As with the questions of relevance and hearsay, the Court simply does not have adequate information of the precise testimony and documents at issue and the context of such evidence to properly evaluate the probative value or any resulting prejudice for a Rule 403 analysis. Therefore, Defendant's Motion on this issue is denied.

5. *No mention of alleged consensual relationship between DeAngelis and Amy Parker*

Defendant seeks to exclude all evidence of any alleged consensual relationship between DeAngelis and District Manager Amy Parker as irrelevant and hearsay. *See* Docket No. 101, p. 4. While Plaintiff agrees evidence of a romantic relationship between

22

DeAngelis and Parker should be excluded, it argues that evidence of any favoritism DeAngelis showed Parker is admissible because Parker was younger than 40.  *See* Docket No. 107, p. 6.

This evidence is not relevant and is likely hearsay without an exception.  First, Plaintiff does not identify what, if any, evidence of favoritism Parker received versus the Claimants that would be relevant to its claims in this case.  In this context, a trial court is best served when the motion in limine it considers addresses specific evidentiary questions, not general hypotheticals.  Second, based on the evidence on this topic of which the Court is aware, it appears likely that it is hearsay within hearsay – testimony of rumors or what the declarant heard from others.  Plaintiff offers no explanation as to how such evidence is admissible under any hearsay exception.  Therefore, Defendant's motion on DeAngelis' alleged relationship with Parker is granted.

### 6.  *DeAngelis' Separation from K-Mart*

Defendant seeks to exclude facts regarding DeAngelis' termination from K-Mart for subduing a shoplifter when he was a minor as irrelevant and inadmissible because the probative value is substantially outweighed by unfair prejudice under Fed. R. Evid 403. *See* Docket No. 101, p. 6.  Plaintiff argues that Defendant fails to meet its burden to exclude the evidence because it did not explain how such evidence is irrelevant or unfairly prejudicial.  *See* Docket No. 107, p. 6.

There is no apparent relevance to DeAngelis' termination from K-Mart as a minor to the issues in this case.  Moreover, whatever limited probative value such evidence might

have, it is outweighed by the unfair prejudicial effect of such evidence.   Therefore, Defendant's Motion on this issue is granted.

### 7-26.   *Various boilerplate categories*

In categories 7 – 26, Defendant seeks the exclusion of various boilerplate categories of evidence, including excluding evidence or testimony regarding items such as request for the production of non-exhibit documents in front of the jury, requests to stipulate to any fact in front of the jury; reference to requests for admissions in discovery requests; contents of a document not in evidence; visual aids or displays that have not been shown to opposing counsel or admitted into evidence; summaries of evidence that do not comply with the Federal Rules of Evidence; no introduction of hearsay; no mention of any availability insurance to cover any judgment; etc.  *See* Docket No. 107, pp. 7-12.  Defendant does not identify any specific evidence at issue or to which it seeks to exclude under any of these categories.

"Courts look with disfavor on motions in limine 'the gist of which is that the opposing party should be required to comply with the rules of evidence . . . without identifying specific evidence which there is reason to believe may be introduced.'"  *Kimzey v. Diversified Servs., Inc.*, 2017 WL 131614, at *1 (D. Kan. Jan. 13, 2017) (quoting *Graham v. Union Pacific R.R. Co.*, 2008 WL 4643292, at *1 (E.D. Ark. Oct. 17, 2008)) (denying a "purely generic" motion in limine); *Walsh*, 2009 WL 3755553, at *2 (("A court is within its discretion to deny a motion in limine that fails to identify the evidence with particularity or to present arguments with specificity.  Motions in limine which exclude

broad categories of evidence should rarely be granted. The better practice is to address the issues of admissibility as they arise.").  Therefore, Defendant's Motion categories 7 – 26 are denied.  The Court fully expects parties to be familiar with and to abide by the Federal Rules of Evidence, the local rules of the Eastern District of Oklahoma and the pretrial order that is entered in this case as it relate any all evidentiary and trial issues.

## CONCLUSION

Accordingly, as set forth herein, Plaintiff EEOC's Motion in Limine with Brief in Support [Docket No. 103] is GRANTED IN PART and DENIED IN PART and Defendant's Motion in Limine and Memorandum in Support [Docket No. 101] is GRANTED IN PART and DENIED IN PART.  Moreover, the Court anticipates and expects the parties to be prepared to articulate and argue all specific remaining unresolved evidentiary issues at the pretrial conference in this matter.

DATED this 5th day of June, 2024.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**